*A. H. De France*, for defendant in error.

———▸●◂———

## SIMMONS *v.* CALIFORNIA POWDER CO.

(*Supreme Court of Colorado, March 14th, 1884—Appeal from the County Court of Arapahoe.*)

1. STATUTORY CONSTRUCTION. The settled canons of judicial construction require that possible interpretation be given a statute which will render it effective and effect the purpose of the legislative intent, if such intent can be reasonably inferred.

2. THE FOURTEENTH GROUND OF ATTACHMENT. Tested by this rule it must be held that by the fourteenth subdivision of section 1 of the attachment act of 1881, the Legislature intended to define a separate and

additional cause of attachment, to wit: an indebtedness existing upon the overdue instruments and accounts specified.

STONE, J.    The sole question presented by the record in this case is, whether the fourteenth subdivision of section 1 of the attachment act of 1881, constitutes a separate and specific ground of attachment; one in addition to those enumerated in section 92 of the Civil Code, of which the act of 1881 is amendatory.

The first paragraph of the section is as follows:

"No writ of attachment shall issue unless the plaintiff, his agent or attorney, or some credible person for him, shall file in the office of the clerk of a District Court, or in the office of the clerk of a County Court in the State, or with the judge of said County Court, where no clerk is provided, in cases where said courts have jurisdiction given to them by law, an affidavit setting forth that any person is indebted to such creditor, stating the nature and amount of such indebtedness, as near as may be, and alleging any one or more of the following causes for attachment, to wit:" Then follows an enumeration of such specific causes, beginning:   "*First*, That the defendant is not a resident," etc.

Twelve causes are thus set forth as separate grounds of attachment, and then follows this paragraph:

"*Thirteenth*—In every case where any affidavit shall be made and filed as aforesaid, it shall be lawful for such clerk to issue a writ of attachment, directed to the sheriff of the county, or to any other county as hereinafter provided, returnable like other writs or process in this act, commanding him to attach the lands, tenements, goods, chattels, rights, credits, moneys and effects of said debtor, of every kind, or so much thereof as will be sufficient to satisfy the claim sworn to, with interest and costs of suit, in whose hands or possession the same may be found."

The amendatory act of 1881 re-enacts the whole of said section 92 of the Code, verbatim, and adds the following, after the foregoing paragraph:

"*Fourteenth*—In all actions brought upon overdue promissory notes, bills of exchange, other written instruments for the direct payment of money, and upon book accounts, the creditor

may have a writ of attachment issue upon complying with the provisions of this section."

The meaning of this added subdivision of the section, is the question in controversy.

Three possible constructions are suggested in the arguments of counsel in this and the other cases involving the same question.

First, that the language used provides no specific or added ground of attachment, but means simply that in the cases arising upon the classes of overdue indebtedness specified, attachment will lie, provided they are coupled with any of the preceding enumerated grounds of attachment that may exist in the given case. But this construction would render the paragraph wholly useless, for the reason that under the preceding section of the act of which this is amendatory, (Sec. 91 of the Code,) in case any of the twelve enumerated cases existed, attachment would lie upon any of these specified matters of overdue indebtedness, without the amendatory provision in question, and this latter would add nothing whatever to the law as it existed before the amendment. Since we must concede that the Legislature intended some change in the existing law, by enacting the amendment, we are therefore forced to reject this construction, which would render the amendatory act, so far as it relates to the whole of said section 92, utterly useless.

The second construction contended for is, that the amendment in question was intended to restrict the operation of the provisions of section 94 of the Code, and to cut off the writ in all cases where the debt is not due. Section 94 is as follows :

" Actions may be commenced, and writs of attachment issued as prescribed in this chapter, upon debts or liabilities not yet due, if the affidavit states any of the cases mentioned in the preceding section [section ninety-two], except the first, second and third subdivisions of said section, provided, that any judgment obtained under the provisions of this section shall be with a rebatement of the interest from the time such judgment is rendered until the time at which said debt or liability would have become due."

This construction is not only a strained one, but is inconsistent with the amendatory act itself, inasmuch as the latter

neither expressly nor impliedly repeals or modifies section 94. It in no way refers to said section, but, on the contrary, expressly declares the enactment to be an amendment to section 92, and hence its effect cannot be extended by construction beyond its declared object and purport, unless by a necessary implication, which certainly does not arise out of either the language itself or the declared purpose, but is repugnant thereto.

The third and last meaning contended for, unless we say it means nothing at all, is, that it was intended to create, and does so create a specific and new cause of attachment, in addition to those before provided and existing in section 92 of the Code. The principal difficulty in giving the language employed this construction, a difficulty I think more apparent than real, consists in the awkwardness of the phraseology and mode of expression in framing the provision. It will be observed that the paragraph numbered "thirteenth" of section 92, contains no cause for attachment, but sets forth the mode of procedure after the filing of the affidavit, provided for in the first paragraph of the section, and the numbering of this latter paragraph of the section is simply a blunder or oversight in preparing, copying or printing the act. The same oversight is perpetuated in the amended act of 1881, and the framers of the latter act being evidently misled by the former, numbered the added subdivision "fourteenth" instead of placing it immediately after the twelfth ennumerated subdivision, and numbering it thirteenth, and omitting the numbering of the closing paragraph of the section. Had this been done, the meaning would have been more evident. In addition to such correct placing and numbering, had the wording followed the phraseology of the other twelve stated causes of attachment, for example: "That the indebtedness of the defendant is upon an overdue promissory note, bill of exchange, other written instrument for the direct payment of money, or upon book account;" there could have been no question as to the meaning. It is argued, however, that the closing words of the paragraph, "the creditor may have a writ of attachment issue upon complying with the provisions of this section," render the whole subdivision obscure and meaningless, unless they may be construed to imply that in actions brought upon in-

struments and accounts of the character specified in the first clause of the section, attachment will lie, provided there is a compliance with the provisions of the section requiring affidavit of the existence of some one of the twelve causes enumerated. This construction we have already discussed and disposed of as untenable, because adding nothing to the previously existing law. We think this latter part of the paragraph under consideration can be reasonably construed to imply no more than a compliance on the part of the creditor with the requirement of the section touching the filing of the affidavit, and setting out therein all that is prescribed in the first paragraph of the section preceding the enumerated grounds of attachment as a foundation for the writ.

But even in this view, we must concede that the words "the creditor may have a writ of attachment issue upon complying with the provisions of this section," are altogether superfluous, such condition being already fully covered by preceding provisions of the act. If, then, we reject these latter words of the provision as superfluous, we have left a provision which contains a meaning, and which can have but one rational meaning, considering its position and numbering in the supposed proper order of the enumerated causes of attachment, as well as considering the character of the provision itself, thus eliminated from the useless condition appended. The evident meaning, in this view, is that this numbered subdivision was intended to define a separate and additional cause of attachment, to wit, an indebtedness existing upon the overdue instruments and accounts specified. No other construction would give the act any effect whatever other than already conferred by pre-existing statutes. The settled canons of judicial construction require that possible interpretation to be given a statute which will render it effective, and effect the purpose of the legislative intent, if such intent can be reasonably inferred.

The argument against the harshness of the law entailed by such a cause of attachment is without force when directed to the judicial instead of the legislative department. We have no disposition to question the necessity, utility or propriety of the provision as a ground of attachment, even were it within our province so to do. If it be said that it entails hardship upon the debtor, it may be replied that to the legislative mind

in enacting this amendment to the former statute, it may have appeared that the absence of such a law had entailed greater hardship to the creditor. That such a law is not without precedent, the statutes of many States, for many years, sufficiently attest.

Stripped of unnecessary verbiage, and disregarding inaptness in phraseology and oversight in the numbering and position, as not fatal to the evident intent and reasonably inferable meaning, we must hold the provision in question to intend and constitute a distinct, specific, and valid ground of attachment, additional to the twelve others enumerated in the act.

There being no error in the ruling and judgment of the Court below, the judgment will be affirmed.

*Judgment affirmed.*

*Markham, Patterson & Thomas,* for appellant.
*Bullick, Baxter & Dickson,* for appellee.