## McGinnis et al. v. Egbert.

| | |
|---|---|
| 8 | 41 |
| 11 | 391 |
| 11 | 453 |
| 8 | 41 |
| 12 | 250 |
| 8 | 41 |
| 13 | 108 |
| 8 | 41 |
| 17 | 246 |
| 8 | 41 |
| 23 | 370 |
| 8 | 41 |
| 30 | 436 |
| 8 | 41 |
| 32 | 285 |
| 8 | 41 |
| 37 | 28 |

1. The statute authorizes a change of boundaries in certain cases, and the relocation of a mining claim by the owners. It also makes provision for supplying omissions or amending defects in the original location certificate; and where such amendment is made before adverse rights attach, the amendment relates back to the original location.

2. A subsequent locator cannot object that all the steps necessary to a valid location of a mining claim were not performed at the time of its location, provided they were afterwards performed before other rights attached.

    The rule is applicable when objections are made that claims were not sufficiently marked upon the ground at the time of location.

    Also in cases of failure to file location certificates within three months after discovery of claim, as required by statute.

    Also for failure to sink a discovery shaft to mineral in place at time of survey.

3. The object of the statute in requiring an affidavit to be made and recorded of annual labor performed is to preserve evidence of the fact that the labor was performed; the law fixes no time within a year when the work must be done, and if done any time during the year it is enough.

4. The statute does not provide that an affidavit shall not embrace more than one claim, and if more than one is included it cannot be construed into an omission or evasion of any material requirement.

5. If work is resumed on a claim after it has been open to relocation, but before relocation is actually made, the rights of the original locators stand as if there had been no failure.

6. The congressional act of January 22, 1880, fixed the 1st day of January as the commencement of the annual period for all unpatented claims then existing. The act took effect from the date of its passage. The object of this amendment of the law was to render the annual periods uniform as to all mining claims, and

the exemption of claims from the performance of labor for a portion of a year in certain cases was a necessary result of the amendment.

7. A deed to mining property, acknowledged before a justice of the peace of a county different from that in which the property is situate, without any certificate to the official character of the officer taking the acknowledgment, or to the genuineness of his signature, is not properly admissible in evidence without further proof of its execution.

8. The defendant derived title by conveyance from Mary J. Forbes; a deed from L. T. Wright to Jennie Forbes was offered in evidence and received. *Held*, that the court should have required some proof that these names described the same person.

9. Proof that a stranger to a controversy appropriated as his own a claim which had been located, possessed and improved by another, basing his right so to do upon a forfeiture of the rights of the original owner, affords no presumption that the appropriation was lawful.

10. The declaration of an original locator of a claim, made after parting with his right thereto, and offered to impeach the validity of the claim made by him, *held* to have been properly excluded.

11. The verdict in suits of this character should find that one party or the other is entitled to the possession of the claim in controversy by virtue of a compliance with the statutes of the United States and the state of Colorado.

*Appeal from District Court of San Juan County.*

The facts are stated in the opinion.

Mr. J. W. Mills, for appellants.

Messrs. John G. Taylor and Sam. P. Rose, for appellees.

Beck, C. J.  The appellants, McGinnis and Shields, brought this action in support of an adverse claim filed by them against the issuance of a patent to the Winnebago lode upon the application of the defendant Egbert. The complaint alleges the right of the plaintiffs to occupy and possess said mining claim, or the greater part of it, by virtue of a location of the same on the 19th day of July, 1880, under the name of the Little Chief. It alleges

that said defendant wrongfully ousted the plaintiffs on the 24th day of February, 1882.

It is contended that the plaintiffs established on the trial the performance, on their part, of the various steps necessary to constitute a valid relocation of the property. They filed an original location certificate on the 6th of September, 1880, and an amended location certificate on the 18th day of November following. They also proved the performance of annual labor for the year 1881.

The defendant was permitted to introduce in evidence, over the objections of the plaintiffs, an original and an additional location certificate of the Winnebago lode; also deeds of conveyance from the original locator and his grantees, vesting all rights and title acquired under the location of the Winnebago lode in defendant; also proof of the performance of annual labor upon said claim for each year from 1876 to 1881 inclusive.

We will not undertake to discuss all the questions raised by the twenty-nine assignments of error in this case, but will consider such as we deem material to an impartial adjudication of the respective rights of the parties. Upon the production of the original location certificate of the Winnebago lode, the following objections were interposed on the part of the plaintiffs:

1st. "The defendant has shown no location of the said lode by erecting a discovery stake and posting a notice, as required by law, previous to the filing of a location certificate and by the sinking of a discovery shaft."

2d. "The certificate is void for uncertainty, in that it does not describe the claim by reference to some natural object or permanent monument."

It is also urged, as a further objection, that it was not proved that the boundaries of the claim were staked, as required by law.

Being a purchaser of the claim, the defendant may have been unable to prove all the acts which were, in fact, performed by the original locator at the time of the location of the Winnebago lode.

The original location certificate was executed by G. H. Merril, as locator. It states that the location was made on the 29th of July, 1874, the certificate being filed for record on the 26th day of September of that year.

None of the defendant's witnesses were present at the location of the claim or saw it about that time. The witness Curry testified that he visited the claim in September, 1875, and that there was then a shaft upon it about twelve feet deep, which was the only shaft upon the claim.

Andrew Forbes testified that he visited it in June or July, 1876, in company with Captain Graham, from whom he had previously purchased the claim, and that they measured it off, at that time, and set permanent stakes at the corners, and at the centers of the side lines. He describes the discovery shaft, as it then existed, to be a cut or adit, about twelve or fourteen feet deep, sunk in solid mineral. He says this shaft or adit was located about the center of the claim, and that the vein could be traced right along. He further says that he hired men, a few days afterward, and had one hundred dollars' worth of labor done in sinking this shaft to a greater depth.

The only defect alleged to exist in the location certificate is, that it fails to describe the claim with reference to some natural object or permanent monument.

There was an attempt to conform to the requirements of the statute in this particular, but the description is too uncertain to be of any practical value. To remedy this defect, an additional certificate was filed by Jennie R. Forbes, a grantee of the lode, on the 6th day of October, 1880. If this certificate was proper evidence in the case, it cured the defect in the original.

The only objection interposed to the admission of the additional certificate was, that it did not state the number of linear feet claimed on each side of the center of the discovery shaft.

It is not claimed by the defendant that any relocation of the Winnebago lode was made at the time of making

and recording the additional certificate. The certificate does not state that a relocation was made. Its purpose was merely to cure the defect mentioned in the original, as clearly appears from its contents. The commencement is as follows:

"For the purpose of amending, correcting and clearly defining the location and boundaries of the Winnebago lode, * * * I offer the following corrected survey." The original certificate stated the number of feet claimed on each side of the center of this discovery shaft, and no change of boundaries purports to have been made by the corrected survey. It appears to be merely *descriptive* of the boundaries as originally established, stating where the corners and stakes are located, and describing the claim with reference to natural objects and permanent monument.

The statute authorizes a change of boundaries, in certain cases, and a relocation of the claim by the owners. It also makes provision for supplying omissions or amending defects in the original location certificate, and where such amendment is made before adverse rights attach, the amendment relates back to the original location.

The same defect which is alleged against the original location certificate of the Winnebago lode also existed in the original certificate of the Little Chief. This was conceded by the filing of an amended certificate by the plaintiffs.

The latter instrument, however, was not filed for record until the lapse of several weeks after the defect in the location certificate of the Winnebago claim had been corrected. If, then, it be said that at the time of plaintiffs' entry upon the claim, no valid location of it existed, on account of said defect in the location certificate, it may be answered that no valid relocation of the claim existed when the defendant's amendments were recorded.

We are of opinion that the defendant was in a position, under the foregoing facts and circumstances, to in-

voke the rule of decision, that a subsequent locator cannot object that all the steps necessary to a valid location of the mining claim were not performed at the time of its location, provided they were afterwards performed before other rights attached.

This rule was applied when objections were raised that claims were not sufficiently marked upon the ground at the time of the location. *North Noonday M. Co. v. Orient M. Co.* 6 Sawyer, 313; *Jupiter M. Co. v. Bodie M. Co.* 7 Sawyer, 114.

It was likewise invoked in cases of failures to file location certificates within three months after discovery of claims, as required by statute. *Faxon v. Barnard,* 2 McCrary, 44.

So also it has been held that a failure to sink a discovery shaft to mineral in place at time of survey and location may be cured by subsequently so sinking it. And the same will relate back to the location and enable the locator to hold the claim against all who had not acquired interests in the lode at the time the acts were performed. *Zollars and Highland Chief v. Evans,* 2 McCrary, 39–43. See, also, *North Noonday M. Co. v. Orient M. Co.* 6 Sawyer, 309.

As regards the objection that the testimony did not show a discovery notice had been posted, as required by law, it is sufficient to say that, under the circumstances, it may fairly be presumed in favor of a purchaser that these preliminary steps were performed. *Harris v. Equator Mining and Smelting Co.* 2 Colo. L. R. 63–66.

There was no error in the admission of the location certificates.

To prove the performance of annual labor upon the claim, the defendant relied both upon recorded affidavits and oral testimony. Objections were made to the admission of the several affidavits and exceptions reserved. Plaintiffs' counsel strongly insist that the district court committed error in admitting them for reasons following.

One objection urged against some of the affidavits is,

that they were prematurely filed. Counsel contends that the statute provides an "affidavit period," as well as a "labor period," and that no authority is given to make and record an affidavit of the performance of annual labor except within this affidavit period. Consequently, if the same is made and filed *before* the period arrives, it is as fatal to its validity as if made and filed *after* the period expires.

The language of the statute is, "within six months after any set time or annual period allowed for the performance of labor, or making improvements upon any lode claim, the person on whose behalf such outlay was made, or some person for him, shall make and record an affidavit," etc. Gen. Stats.˙p. 725, sec. 26.

Counsel says: "For obvious reasons the language and policy of the law forbid an assessment period to be anticipated by the filing of an affidavit, till the period has expired; then for six months, and no longer, affidavits may be filed."

The learned counsel omits to state what the "obvious reasons" are which forbid the making and recording of a labor affidavit until the assessment year or period expires, and we are free to say that such reasons do not occur to us.

The object of the statute evidently is to preserve evidence of the fact that the annual labor has been performed. It was said in *Belk v. Meagher*, 104 U. S. 283: "The law fixes no time within a year, when the work must be done. Consequently, if done at any time during the year, it is enough." If, then, the work may be done at any time within the assessment year, and if the object of the statutory provision in question is to preserve the evidence of its performance, it is difficult to comprehend why the evidence may not be taken and preserved as soon as the work is done.

The construction insisted upon would be a reversal of the rule, that a writing made to preserve the evidence of

an event should be made while it is recent and fresh in the memory.

It is apparent that the statute contains no such prohibition. Like a statute of limitations, it fixes a limit beyond which the privilege of preserving the evidence by an *ex parte* affidavit is cut off, but requires no time to elapse after the work is done before the affidavit may be recorded.

Another objection made to certain of the affidavits was, that they contained more than one lode, and were, void for this reason.

The argument upon this objection is, that the statute is in derogation of the common law and must be strictly construed. So construing it, no authority is given to include more than a single claim, or part of a claim, in one affidavit. "This is clearly shown," says the counsel, "by the form of the affidavit given in section 1824, in using the words: '*Here describe claim or part of claim.*' Also, '*owner of said claim;*' also, 'for the purpose of holding said claim.'"

The argument is illustrated by the ruling of Judge Story upon a deposition, reported in *Bell v. Morrison,* 1 Pet. 355. The act of congress under which the deposition was taken provided that the person deposing "shall be carefully examined and cautioned, and sworn or affirmed to testify the whole truth, and shall subscribe the testimony by him or her given, after the same shall be reduced to writing, *which shall be done only by the magistrate taking the deposition, or by the deponent in his presence.*" The deposition in question was excluded, by the learned justice, because "there was no proof by the certificate of the magistrate, or otherwise, that the deposition was reduced to writing in the presence of the magistrate." He says this was a fact made material by the statute, and that every word contained in the magistrate's certificate may be perfectly true, and the deposition may not have been reduced to writing in his presence.

The argument, as illustrated, is a *non sequitur*. The material requirements of the affidavit in question are that it describe the claim or part of claim, containing the name of the owners for whom the work was done, and state the value of the work done.

The statute does not say that an affidavit shall not embrace more than one claim. If more than one is included, it cannot be construed into an omission or evasion of any material requirement. Suppose, for example, that an affidavit states that "one hundred dollars' worth of work or improvements were made or performed in the month of July, 1876, 'on each of the following lode claims, to wit: The Winnebago, the Fountain and the J. A. White." Does not such affidavit contain a positive averment that labor or improvements of the value of $100 was made or performed on the *Winnebago* lode, at the time specified? Can it be said that every word of the affidavit may be perfectly true, and yet this amount or value may not have been expended on this particular lode? This test shows the argument urged in favor of the strict construction contended for, to be unsound.

It is possible to so frame an affidavit as to render it evasive in respect to any essential requirement, and in such case the rule stated by Judge Story would apply, and the instrument be excluded as evidence, since no presumptions could be indulged in its favor.

There are instances when an affidavit embracing more than one claim would be clearly admissible, as where several claims are held in common. The law of congress authorizes the whole expenditure, in such case, to be made upon a single claim, when it is done for the development of all. The affidavit of such expenditure would necessarily embrace the name of each claim for the development of which the work was done. But the same objections here presented would be equally applicable to that case. It does not answer this suggestion, to say

that the several lodes, in such instance, may be regarded as a single claim. The claims are, in fact, distinct and separate. They are separately located, have separate names and records, and each claim has its separate boundaries. The only difference in the two cases is, that in the latter they lie so contiguous to each other that work done upon one may improve or develop all. This may, however, continue for one or two years only, after which they must be separately worked as in other cases.

We do not think this objection well taken. Upon the production of an affidavit of Andrew Forbes, offered to prove performance of annual labor on the Winnebago lode for the year 1876, the objection made was: "It shows that the work was not done in any one assessment year, but in parts of two assessment years." This affidavit was made on the 6th day of September, 1876, and stated that the work was performed in the months of July and August of that year. The assessment year, at that time, expired as to this claim on the 29th day of July.

As no forfeiture was declared for failure to perform labor for either of the years 1876 or 1877, the objection is immateral. It may also be observed that there was oral proof, which the jury may have deemed sufficient to warrant a finding, that the annual labor was duly performed for the year ending July 29, 1876.

But, if it be true that the claim was open to relocation at the expiration of said assessment year, the facts appear that it was not then relocated, and that work was afterward resumed by the owners.

It was said in *Belk v. Meagher, supra:* "If work is resumed on a claim after it has been open to relocation, but before relocation is actually made, the rights of the original locators stand as they would if there had been no failure."

The adverse rights claimed by the plaintiffs are alleged to have accrued on the 19th day of July, 1880.

The important inquiry, therefore, is, was the Winnebago lode open to relocation at that date?

Two labor affidavits were introduced by the defendant, which bear upon this inquiry, as follows:

1st. Affidavit executed by S. W. Raymond, September 8, 1879, stating that one hundred dollars' worth of work was performed upon the claim for the year ending August 10, 1880. Filed for record September 9, 1879.

2d. Affidavit executed by S. W. Raymond, December 9, 1880, stating that one hundred dollars' worth of labor was performed for the year ending December, 1880. Recorded December 13, 1880.

The work mentioned in the first affidavit was evidently performed after the 29th day of July, 1879.

Plaintiffs' counsel says the assessment year, when this affidavit was filed, began and expired, as to this claim, on the 29th day of July. The work stated therein to have been performed would, therefore, protect the claim from forfeiture until the 29th day of July, 1880, a time subsequent to the entry of the plaintiffs.

The objection to the affidavit, that it misstates the expiration of the assessment year, cannot be sustained for two reasons: first, because the statute does not require this fact to be stated; second, for the reason that the assessment period, as to this and other claims, was changed by an act of congress before the expiration of the year.

The congressional act of January 22, 1880, fixed the 1st day of January as the commencement of the annual period for all unpatented claims then existing.

No time being mentioned in the act for its taking effect, the rule stated in *Matthews v. Zane*, 7 Wheaton, *211, applies, and it took effect from the date of its passage. Its effect, therefore, in the present instance, was to extend the assessment year from July 29, 1879, to December 31, 1880.

The object of the amendment of the law was to render

the annual periods uniform as to all mining claims, and the exemption of claims from the performance of labor for a portion of a year, in certain cases, was a necessary result of the amendment. Wade's Am. Min. Law, p. 54, sec. 29, p. 393; Sickel's Min. Laws and Decisions (1881), p. 393.

Both affidavits show the performance of labor within the year as extended by the act of congress. And if the statements contained therein are true, the claim was not open to relocation on the 19th day of July, 1880.

In regard to the instructions prayed on the part of the plaintiffs, no one of them can be held to be correct as to all the propositions therein contained, and the court did not err, therefore, in refusing them.

It was the duty of the court to give proper instructions to the jury upon the legal propositions involved, but we are not advised whether this duty was performed or not, since the transcript does not inform us what instructions, if any, were given.

Up to this point we have considered the points raised, and the rulings of the court, upon the theory that defendant had regularly succeeded to the rights of the original locator of the Winnebago lode. It appears, however, from the transcript of the record, that this fact was not shown by legitimate testimony.

A quitclaim deed purporting to have been executed by G. H. Merril, the original locator, bearing date November 17, 1874, and conveying the claim to C. H. Graham, was admitted in evidence over the objections of the plaintiffs. This deed was acknowledged before a justice of the peace in a different county from that in which the claim is situated, and no certificate to the official character of the officer taking the acknowledgment, or to the genuineness of his signature, was attached, as required by the statute in such case, nor was any other proof of the due execution of the deed offered. The acknowledgment of this deed not having been prop-

erly authenticated, the deed was not admissible in evidence without further proof of its execution. It is excluded by the express language of the statute, which is as follows:  *  *  *  " Neither the same nor the record thereof shall be read as evidence, unless subsequently acknowledged or proved according to law, or unless their execution be otherwise proved in the manner required by the rules of evidence applicable to such writings, so as to supply the defects of such acknowledgment or proof." Gen. Stats. p. 175, sec. 20.

Another exception reserved to the admission of title deeds was to the admission of the deed from L. T. Wright to Jennie Forbes.

The defendant derives title by a conveyance from Mary J. Forbes. The court should have required some proof that these names described the same person.

We would observe, in this connection, that the additional location certificate of the Winnebago lode purports to have been executed by Jennie R. Forbes. If these several names were intended to describe the same person, that fact ought to be made to appear by competent proof.

The ruling of the court rejecting the plaintiffs' offer to prove by the witness O'Brien that he relocated the premises as abandoned property in 1877 was correct. The title to a mining claim cannot be impeached in this way. Had the proper foundation been laid, by proving that the claim had been abandoned by its owners, the testimony might have been admissible; but the *prima facie* case made by the defendant could not be rebutted by proof of the character offered. Proof that a stranger to the controversy appropriated as his own a claim which had been located, possessed and improved by another, basing his right so to do upon a forfeiture of the rights of the original owner, would afford no presumption that the appropriation was lawful.

The excluding of the declaration of Merril, the original locator of the Winnebago claim, made after parting with

his rights thereto, and offered to impeach the validity of the location made by him, was clearly correct.

The plaintiffs' offer to prove the location of the Florence claim in 1875, by said Merril and one Biedell, upon a portion of the premises in controversy, was also properly excluded for the reasons given, and because no proper foundation was laid to render such testimony material.

One of the points urged as entitling the plaintiffs to a new trial, and as showing that the court erred in denying the motion therefor, is, that the testimony established the fact that the discovery shaft of the Winnebago lode as originally located is not upon the ground now claimed by the defendant as constituting said lode claim.

If this point was not submitted to the consideration of the jury, it should have been.

The defendant's title depends, under the issues, upon the validity of the original location, as perfected by subsequent acts performed before the attaching of adverse rights, including the filing of an additional location certificate. If, therefore, the boundaries of the claim, as originally located, were changed after the recording of the original location certificate, so as to leave the discovery shaft outside, the validity of the location cannot be sustained, for the reasons that the additional location certificate neither purports to be a relocation of the claim, nor is it sufficient in form and substance to support a relocation involving such a change of boundaries.

As regards the errors assigned concerning the form of the verdict of the jury, we think the objections well taken, and that the verdict was insufficient to cover the issues involved in a trial of this character. The proceeding is authorized, and to a certain extent regulated, by section 2326 of the act of congress of May 10, 1872. This section makes it the duty of a person filing an adverse claim against the issuance of a patent, within thirty days thereafter, to commence proceedings in a court of com-

petent jurisdiction to determine the question of the right of possession. As the law then stood, the party in whose favor the judgment was rendered became entitled to a patent. But the section was so amended by the act of March 3, 1881, that neither party was entitled to a judgment in his favor, unless he was, at the time of the adjudication, entitled to a patent for the premises in controversy by virtue of a compliance with the mining laws. If neither party establishes such a right, the jury is required to find that fact, and the proceedings in the land office are stayed until a title is perfected.

It is plain, therefore, that the object of the suit is for the information of the officers of the general government, and that the proceeding must be conducted in accordance with the statute which authorizes it. The objection to the verdict is that it does not find that the defendant is entitled to the possession of the Winnebago lode claim, by virtue of a compliance with the statutes of the United States and the state of Colorado.

The verdict is as follows: "We, the jury, in the case of *Edward McGinnis and Frank P. Shields*, plaintiffs, *v. William Egbert*, defendant, do find a verdict for the defendant in the above case."

The defendant being in possession, this verdict conveys no information whether it was returned for the defendant because he had established his title to the lode in manner above indicated, or because the plaintiffs had failed to establish their title to, the Little Chief. If returned for the latter reason, it should have so stated, and if for the former, that fact should have been stated therein. For the errors mentioned, the judgment is reversed and the cause remanded.

*Reversed.*