OMAR ET AL. V. SOPER ET AL.

1. A notice of discovery, posted by the discoverers of a lode of mineral at the point of discovery, containing a specification of the extent of the claim, although no such specification was required to be made by statute, will protect the full extent of the claim against an overlapping claim, during the period allowed by statute for sinking a discovery shaft, even though the boundaries had not been marked.

2. Where one of two discoverers of a lode of mineral acquired the interest of the other, erased the name of the latter from the discovery stake, and changed the date thereon from the time of discovery to the time of acquiring the whole interest, but remained in actual possession, continuing the work of development, and claiming in good faith to be the owner, he did not forfeit any rights acquired by the prior discovery.

3. Under the General Statutes, section 2411, providing for the relocation of abandoned lode claims by sinking a new discovery shaft or deepening the old one, fixing new boundaries or adopting the old ones, renewing the boundary posts, erecting a new location stake, and stating in the certificate of location that the whole or part is located as abandoned property, the surveying, staking and recording of a location certificate of territory previously located, which overlapped the territory of the abandoned claim, does not constitute a relocation of that claim.

4. The failure to record a location certificate within three months from the date of discovery of a lode of mineral, as provided by statute, does not inure to the benefit of the owners of an overlapping claim originating from a junior discovery, who made no attempt to relocate the claim.

5. Revised Statutes of United States, section 2336, providing that when two veins of mineral cross each other, or, approaching from different directions, unite in one, the prior location shall take the mineral at the intersection, or in the vein after uniting, does not apply to single veins.

6. Evidence that the discoverer of a lode of mineral had worked almost continuously on the lode from the time of discovery to the beginning of an action contesting his claim, corroborated by the witnesses and by the amount of work performed, is sufficient to establish his good faith in making a claim to the lode.

7. Where defendants were in actual possession of a mining claim, and engaged in developing it, claiming to be the owners, plaintiffs cannot initiate a title thereto by a survey and the recording of a location certificate.

8. Where the claims of title to a mining claim set up by plaintiffs appear by the record to be void in their inception, plaintiffs have no standing in court to question the validity of defendants' title.

*Appeal from District Court of Boulder County.*

THIS is a contention between claimants of the same mineral lode or vein; the appellants, who were defendants below, calling it the "Golden Bell," and the appellees the "Verde." One of the appellants, Joseph Omar, with one Harry Clark, discovered the Golden Bell on February 24, 1883. They immediately posted a notice at the point of discovery, containing the name of the lode, the date of discovery, and that they claimed one thousand feet northeasterly, and five hundred feet southwesterly, from the point of discovery, and seventy-five feet on each side of the vein, to which they signed their names as the discoverers. The evidence shows that they did considerable work within the sixty days next ensuing, and that their discovery shaft was sunk to the required depth within that period. The testimony of Omar and other witnesses shows this shaft to have been ten feet in depth on the day the Verde was discovered.

On April 4, 1883, the Verde was discovered by E. C. Bradstreet and L. E. Wallace, grantors of the appellees, at a point a few feet southerly of the territory claimed by Omar and Clark as described in their discovery notice. Bradstreet and Wallace, upon uncovering the vein, also posted a discovery notice, claiming one thousand four hundred feet northeasterly, one hundred feet southwesterly, and seventy-five feet on either side of the crevice. This notice also contained the name given the lode (the "Verde"), the date of discovery, and was signed by the discoverers. Their claim, thus made, overlapped the vein and territory of the Golden Bell nearly one thousand four hundred feet.

On the 25th day of April next ensuing, another step in the history of this case occurred, upon which the Verde parties mainly rely in support of their claim to the disputed territory. It appears that Omar and Clark, discoverers of the Golden Bell, owned another claim, called

the "Mammoth," and that they exchanged their interests in these claims on that day; Omar taking Clark's interest in the Golden Bell, and Clark taking Omar's interest in the Mammoth. The irregular manner in which this exchange was made is relied upon by the appellees as an abandonment of the Golden Bell by its discoverers, and as letting in and validating the claim of the Verde parties. Omar describes the transaction thus: He says he worked right along on the Golden Bell from the 24th of February, 1883, until the 25th of April, 1883, and on that day made a trade with Clark. He suggested to him that, they held two lodes together, and proposed that Clark take one, and he would take the other. Clark chose the Mammoth; and Omar thereupon erased Clark's name from the discovery stake of the Golden Bell, putting or leaving his own name thereon, and changed the date of the discovery from February 24, 1883, to April 25, 1883. This statement is corroborated by other witnesses.

The testimony further shows that there was no cessation of work upon the Golden Bell, and that about two weeks after this transaction a rich strike of mineral was made upon it. On or about May 21st it was surveyed and staked. On May 22d Omar made out and signed a location certificate, which he filed for record on May 29th. This certificate gives as the date of discovery April 25, 1883.

The Verde was surveyed and staked June 7, 1883, and the first location certificate was filed for record June 8th. On June 12th the claimants thereof brought suit against the claimants of the Golden Bell, alleging that the plaintiffs' grantors were legally seized and possessed of the Verde on the 4th day of April, 1883; the plaintiffs' ownership and right to possession of said lode through their grantors, and by compliance with the mining laws and regulations; the entry of defendants (the appellants); the ousting of the plaintiffs by them, etc. The defendants,

claimants of the Golden Bell, answered the complaint, traversing its allegations; asserting title in themselves to the property sought to be recovered, by virtue of the discovery of mineral thereon by Omar and Clark on February 24, 1883; the claim then made and posted by them; their compliance with the mining statutes; the transfer to Omar of the interest of Clark therein; the change thereupon made in the notice, and by the subsequent transfers of interests therein to co-defendants. The allegations of this answer were duly traversed by a replication filed by the plaintiffs. Two trials were had below, both resulting in favor of the plaintiffs, claimants of the Verde. On appeal from the last judgment, this court, at the last December term, reversed the judgment of the court below, but afterwards granted a rehearing, which has been had.

Messrs. DOLLOFF and RITTENHOUSE, for appellants.

Messrs. ALPHEUS WRIGHT and L. C. ROCKWELL, for appellees.

BECK, C. J. The first and second paragraphs of the petition filed for rehearing state the substantial grounds relied upon by the appellees in the arguments upon the rehearing. They are as follows: "(1) The decision seems to be based upon the ground that appellees' discovery shaft was sunk upon appellants' claim, a valid subsisting claim, and therefore void. The court erred, in that the discovery of the Verde was made on unoccupied public domain, but it became, by reason of the survey, an over-lapping claim on the Golden Bell. (2) The court erred in deciding that the abandonment of the so-called Golden Bell by Omar and Clark, by making its date of discovery the 25th day of April, 1883, instead of February 24, 1883, did not inure to the benefit of the appellees." It is further urged, in this petition, that the decision of this court in *Mining Co. v. Mining Co.* 6 Colo. 380, hold-

ing " that entering upon premises in the actual possession of another, for the purpose of performing the acts necessary to constitute location and possession, amount only to trespass, and cannot form the basis for the acquisition of title," is not applicable to the facts in this case, because the entry of appellees for the purpose of discovery of the Verde lode was not made on the Golden Bell territory, nor on any ground in appellants' possession.

Upon allowing the rehearing, a question, based, as was supposed, largely upon appellees' theory of the case, was submitted for argument. Counsel for the appellees, however, raised the objection that the question submitted was unfair to them, in that it assumed a state of facts which did not exist. They did not confine themselves to the discussion of this question, but, as they admit, devoted their principal arguments to the case as presented by the whole record. They also alleged errors and inconsistencies in the opinion filed, which were not pointed out in the petition for rehearing. But in view of the facts that the case must be remanded for another trial, and that important facts and points were misapprehended by the court on the former hearing, we deem it expedient that the opinion filed be withdrawn.

The principal errors assigned upon the record of the trial below relate to instructions given the jury in behalf of the appellees, and the refusal to give instructions prayed by the appellants. The main issue involved in the case is whether the discoverers of the Verde (their discovery being upon the extension of the Golden Bell lode, but immediately outside that part of the Golden Bell vein and territory then claimed by its discoverers) could, in the manner here attempted, initiate a claim to the territory of the latter lode which might ripen into a valid claim in their favor through subsequent delinquencies on the part of the original discoverers of that lode.

The proposition of appellants that the claim of Omar

and Clark to one thousand five hundred feet of the Golden Bell lode and territory, on the 4th day of April, 1883, the day of the discovery of the Verde, was then a valid subsisting claim, is supported by high authority. This proposition is disputed by counsel for the appellees. They take the position that the discoverer of a lode cannot keep other prospectors off his lode during the time allowed him by statute for sinking his discovery shaft, by inserting in his discovery notice, in addition to matters required by statute, the number of feet claimed upon the vein on each side of the point of discovery; also that such a notice does not render void an overlapping claim on the same vein and territory, made within the period mentioned, upon a junior discovery. Upon these points the views of appellees' counsel are in conflict with the views of the supreme court of the United States. In the case of *Erhardt v. Boaro*, tried in the circuit court of the United States for the district of Colorado by Hallett, J., and afterwards removed by writ of error to the supreme court of the United States, Judge Hallett held plaintiff's discovery notice defective because it did not state the length claimed upon the lode, nor the length claimed in either direction from the point of discovery. It was upon this state of facts he held the discoverer entitled to claim only the *possessio pedis* while sinking his discovery shaft, and that any other citizen might make a valid location, in the meantime, upon any other portion of the vein. But the effect of the decision is that, if the notice had specified the extent of the claim, the discoverer's right, to the full extent, would have been protected. 3 McCrary, 19; 4 Morrison, Min. Rep. 434. Mr. Justice Field, upon reviewing the case in the supreme court, says: "The written notice posted on the stake at the point of discovery * * * declares that they claimed one thousand five hundred feet on the 'lode, vein or deposit.'" How such fact appears from the record in that case is not for us to inquire. The court held that, al-

though the notice was indefinite in not stating the number of feet claimed on each side of the discovery, yet it would protect seven hundred and fifty feet on either side of the point of discovery from the trespasses or claims of others, for the period of sixty days, the time allowed by the statute of Colorado for the sinking of a discovery shaft. *Erhardt v. Boaro*, 113 U. S. 527. Counsel in the present case raise the point that the statute does not require the discovery notice to contain such a specification. As we have seen, both Judge Hallett, of the district court of the United States for the district of Colorado, and the supreme court of the United States, hold such to be the effect of our statute, if the extent of the claim is specified in the notice. While none of the cases heretofore brought before this court may have presented this identical point, our views of the proper construction of the state statute are in full accord with the foregoing decisions concerning the effect of a legal notice posted at the point of discovery of a lode, which specifies the extent of territory claimed thereon on either side of the point of discovery.

It is conceded that, if the boundaries of the Golden Bell had been marked, no claim to any portion thereof could have been initiated until after a forfeiture had occurred. To hold that the miner, as soon as he discovers a lode, must immediately stake the territory which he is entitled to claim thereon, in order to protect it from the invasion and claims of other persons learning of his find, would be an unreasonable, if not an impossible, requirement. An attempt to do so would result, in many cases, in leaving the main portion of the lode outside the staked boundaries. The object of the statute, in giving sixty days for sinking the discovery shaft, was evidently to afford the miner time to sink his shaft, and to ascertain the true course of his lode, when he would be qualified to mark its boundaries on the surface. When the legislative intent is clear, or can be reasonably inferred, it is

held to be the duty of the courts to so construe the statute as to render it effective, if possible to do so under the rules of statutory construction. *Simmons v. Powder Works*, 7 Colo. 285–289. To hold that the claim is protected throughout its whole extent, during this period, from invasion and adverse claims, by a notice which, in addition to the statutory requirements, shall specify the extent of territory claimed along the vein on both sides of the point of discovery, is both reasonable and equitable. It is likewise consistent with the spirit and policy of the statute, and a construction which renders it effective. Such a notice, properly made and posted, is an appropriation of the territory specified therein for the period of sixty days.

It has been repeatedly held that only the unappropriated mineral lands of the United States are open to exploration and location. No one can therefore lawfully enter upon the territory so claimed, during the period named, for the purpose of initiating a claim thereto; and it necessarily and logically follows, from an application of the same rules and principles, that no one, during this period, can stand outside such appropriated territory and in any manner initiate a claim thereto capable of being rendered valid in the future by the happening of fortuitous circumstances.

The intimation that the claim of Omar and Clark to the Golden Bell was not made in good faith is, in our judgment, without foundation, and is evidently based on a misconstruction of Omar's testimony. He swears that he worked almost continuously upon the lode from February 24th up to the commencement of this suit, and in this he is strongly corroborated by other witnesses, as well as by the amount of work which he performed upon the ground in controversy during this time.

But another position assumed in argument is that the Verde party made no claim to the territory in dispute until after Omar and Clark had abandoned their claim

thereto, and until after the forfeiture became complete by the failure of the appellants to record their certificate of location of the Golden Bell within three months after the date of the discovery, February 24, 1883; that the owners of the Verde then appropriated the forfeited territory by extending their survey over the same. This extension of survey, so called, took in about one thousand four hundred feet of the appellants' lode, including their discovery shaft and all the workings, and was made while the appellees were in actual possession. We observe, in the first place, that the record shows the claim of the appellees did not originate in this survey; and, in the second, that if it did it was invalid, for the reason that, under the mining laws and decisions, title to a lode in the actual possession of citizens who claim to own it, and who are engaged in developing it, cannot be initiated by other persons by a survey, and the recording of a location certificate. The origin of appellees' claim dates from April 4, 1883, when their grantors uncovered the lode at a point immediately southerly and outside of the territory claimed by the discoverers of the Golden Bell. The notice then posted by the Verde discoverers claimed one thousand four hundred feet "northerly" (which overlapped and included all but one hundred feet of the Golden Bell), and one hundred feet "southerly."

The Verde party denominate their survey, made June 7, 1883, a relocation of the Golden Bell, claiming that it was open to relocation at that time, by abandonment and forfeiture. If the lode was open to relocation at the date of this survey, no relocation was made or attempted in manner required by law. All that was attempted to be done was to perfect the location of the claim, previously made by the discoverers of the Verde, to the territory of the Golden Bell, by surveying, staking and recording a location certificate of that identical territory, all of which, as we have shown, was without warrant of law. These acts not only fall far short of the require-

ments of the statute concerning the relocation of abandoned lode claims (Gen. St. p. 725, § 2411), but do not even constitute an effort to comply with the statute.

The attempt to justify the steps taken by the Verde claimants for the acquisition of title to the Golden Bell, by reference to the statutes relating to location of cross-lodes, is equally abortive. It is illogical; there being no analogy between the two classes of locations, nor in the statute relating thereto. In the present case there is a single vein; and under a fair construction of the statutes, federal and state, the portion thereof appropriated by the first discoverer is wholly withdrawn from interference or claim by any other citizen until some default is made. Such is not the law with regard to the location of cross-lodes. In such case there are two lodes, which either cross each other, or, approaching from different directions, unite at some point. In such cases the act of congress (R. S. 2336) authorizes the subsequent locator to cross or enter upon the territory of the claimant of the other lode. In this class of cases a claim to a portion of the previously appropriated territory may be initiated, by authority of law, while it remains a valid subsisting claim; but no such authority exists as to the former class.

Concerning the alleged abandonment of the Golden Bell by Omar and Clark on April 25th, a reconsideration of the point shows the claim was not abandoned by the proceedings which took place on that occasion. The purpose in view was merely an exchange of property, by which Omar should take Clark's interest in the Golden Bell, and Clark should take Omar's interest in the Mammoth lode. However irregular this transaction may have been, Clark's possession of the Golden Bell being surrendered to Omar, the intention of the parties was effectuated. It has been held that a written conveyance is not necessary to the transfer of a mining claim. *Mining Co. v. Taylor*, 100 U. S. 37; *Tunnel Co. v. Stranahan*,

20 Cal. 198.   Omar, by erasing Clark's name from the discovery notice, and remaining in actual possession, assumed full ownership of the claim.   It is a settled principle of law that an abandonment of property is a question of intention.   A transaction affecting property may be irregular; but if the owner does not intend to abandon it, and continues in possession, claiming in good faith to be the owner, no abandonment can take place.   *Mallett v. Mining Co.* 1 Nev. 188; *Myers v. Spooner*, 55 Cal. 257. The testimony as to Omar's intention in the matter is conclusive that he did not intend to abandon this lode. He continued the work of development as before, and about two weeks afterwards struck rich mineral.   We are also of the opinion that he did not forfeit any rights previously acquired by himself and Clark in the Golden Bell, by the changes made in the discovery notice at the time of the transaction referred to.   If this claim subsequently became liable to relocation by reason of the failure of Omar and his co-owners to record their location certificate within the period of three months from February 24, 1883, the date of discovery, such default did not inure to the benefit of the appellees, since, as we have seen, they neither made nor attempted to make a relocation.   ⋅

The result of this review of the case upon the whole record is substantially to narrow the issues to the single question whether a claim of ownership to mining territory which has been appropriated by the discoverers of a lode therein, made in the manner and under the circumstances above stated, can be initiated by other persons, before default or forfeiture on the part of the discoverers, so as to make it capable of ripening into a valid title, and to answer the same in the negative.   It appearing, then, from the record before us, that the claims of title set up by the plaintiffs below to the territory of the Golden Bell were void in their inception, both the claim thereto asserted upon the discovery of the Verde, and that alleged

by way of relocation or extension of survey, the determination of this point is an end of the controversy as between the parties to this record. The plaintiffs, not being invested with any title, have no standing in court to question the validity of defendants' title. Mining titles cannot be questioned collaterally. *McGinnis v. Egbert,* 8 Colo. 46.

It follows from the points decided that the instructions given to the jury on behalf of the appellees were misleading and erroneous in important particulars. The first assumes that adverse rights to mining property may accrue or intervene before forfeiture; the fifth, that all the rights of the discoverers of the Golden Bell, acquired by discovery and posting of notice on February 24, 1883, were lost by changing the names of the claimants, and the date of the discovery notice; the sixth, that the appellants are estopped, by their certificate of location, from claiming a discovery of their lode on the 24th day of February. All these instructions are erroneous and misleading as between the parties to this controversy, for the reasons above given. The points decided will enable the trial court to correctly instruct the jury concerning the legal propositions involved in the action.

Ordered that the judgment entered herein on the 4th day of January, A. D. 1888, be vacated and set aside; that the opinion filed be withdrawn, and that the judgment of the court below be reversed and the cause remanded.

*Reversed.*