EDWARDS, SECRETARY OF STATE, v. DENVER & R. G. R. Co.

1. CONSTRUCTION OF STATUTES — WHEN WORDS MAY BE SUPPLIED AND WHEN TREATED AS SURPLUSAGE.— When two legislative purposes, each of which renders the law effective, are suggested, courts may not ordinarily supply or substitute a word in order to give one purpose preference over the other. But where the alternative is presented of attributing to the enactment a rational purpose and effect, or regarding it as a dead letter, courts may supply words or treat words as surplusage, or hold that a specific reference to a certain section refers in fact to another, or give the statute effect notwithstanding the misdescription therein of a prior act upon which it depends.

2. REPEAL — EFFECT OF AMENDATORY ACT COVERING SUBJECT-MATTER OF FORMER STATUTE.— An affirmative statute providing a different regulation in connection with the same specific act, covering the whole subject, and evidently intended to prescribe the exclu-

13   59
13  295
13   59
14  405
13   59
2a 464
13   59
19  432
13   59
21  267
22  526
5a  324
13   59
23  262
13   59
10a 456
13   59
26  961
13   59
32  313
17a 393
17a 394
13   59
36  421

sive rule in relation thereto, repeals a former statute on the sub-
ject though it contains no repealing clause or other reference to
the act repealed.

3. TITLE OF STATUTE — CONSTITUTIONAL REQUIREMENT. — If the sub-
ject considered in the body of a statute be germane to the general
subject expressed in the title, the constitution is in this respect
complied with. It would be dangerous as well as unreasonable to
hold that each and every subdivision of a general subject must be
specifically mentioned in the title.

4. AMENDMENT BY ADDITION OF A NEW SECTION. — An additional sec-
tion introducing a wholly-new but germane requirement, complete
in itself, and changing no existing provision of the act to which it
is added, is not void on the ground that such act is not re-enacted
and published at length.

## Appeal from District Court of Arapahoe County.

THE Fifth General Assembly adopted the following
statute: "That from and after the passage of this act all
corporations, either domestic or foreign, organized for
pecuniary gain under any of the provisions of chapter 19
of the General Laws of the state of Colorado, shall pay
to the secretary of state, upon the issuing of the certifi-
cate, as provided in said chapter, the sum of $10: pro-
vided, the par value of the capital stock shall not exceed
$100,000; but, in case the capital stock of said corpora-
tion shall be in excess of said $100,000, the secretary of
state shall collect the further sum of ten cents on each
and every thousand dollars of such excess." Sess. Laws
1885, p. 153.

Subsequent to the passage of this act the Denver &
Rio Grande Railroad Company, with a capital stock of
$73,500,000, tendered its certificate of incorporation to
appellant, who was then secretary of state. Appellant
demanded the sum of $7,341.50 as a filing fee, in pur-
suance of the foregoing law. Appellee deposited the
amount under protest, claiming that it was only required
to pay $8.50, the sum required by a former statute. It
immediately instituted an action for the purpose of en-
joining the secretary of state from paying the amount of

this deposit into the state treasury; also for the purpose of compelling this officer to refund the same, save and except the sum of $8.50 above mentioned.

Upon trial in the district court the position of appellee was sustained, and judgment entered according to the prayer of its complaint. To reverse that judgment the present appeal was taken.

THEODORE H. THOMAS, attorney-general, for appellant.

Messrs. WOLCOTT & VAILE, for appellee.

CHIEF JUSTICE HELM delivered the opinion of the court.

Four distinct propositions are advanced by counsel for appellee in support of the judgment rendered in this case. We will consider these propositions separately, though not in the exact order of presentation by the briefs.

*First.* That the statute under consideration is a nullity, because its application rests wholly upon the performance of an act nowhere directed or authorized, viz., the *issuing* of certificates of incorporation by the secretary of state to corporations organized for pecuniary profit.

The statute in question provides that from and after its passage all corporations organized for pecuniary gain shall pay to the secretary of state, "upon the issuing of the certificate as provided in said chapter," the fee designated. But "said chapter," being chapter 19 of the General Statutes, does not require the *issuing* of certificates by the secretary of state where the corporation "is organized for pecuniary gain." Hence giving the word "issuing" its ordinary signification, and the provision a literal construction, would render the enactment a mere idle collection of phrases without force or effect.

The question here presented, therefore, is not which of two or more views as to the meaning and effect of a statute shall be taken; it is, rather, shall the statute be

regarded as wholly meaningless and ineffective for any purpose whatever? The rules of construction in the two cases may be different. When two legislative purposes, each of which renders the law effective, are suggested, the courts may not ordinarily supply or substitute a word in order to give one of such purposes preference over the other; but where the alternative is presented of attributing to the enactment a rational purpose and effect, or of regarding it as a dead letter upon the statute book, the courts, when necessary, exercise great latitude in the endeavor to avoid the latter contingency. The view that a solemn legislative provision is a useless and lifeless thing should only be entertained when no reasonable intendment can be fairly deduced therefrom after diligent and industrious search, aided by all pertinent rules of statutory interpretation.

Upon this subject courts and law-writers use language much stronger than the above. The learned author of Potter's Dwarris on Statutes and Constitutions, at page 128, quotes with approval the following maxim laid down by Vattel: '' The interpretation which renders a treaty (or statute) null and void cannot be admitted; it is an absurdity to suppose that after it is reduced to terms it means nothing. It ought to be interpreted in such a manner as that it may have effect, and not to be found vain and illusive." When a statute would otherwise fail of its object, words may be treated as surplusage. *U. S. v. Stern*, 5 Blatch. 514; *Simmons v. Powder Works*, 7 Colo. 285. An act referring in terms to one section may be held to refer to another, if it would otherwise be a nullity. *People v. King*, 28 Cal. 265. An act misdescribing a prior act, upon which it depends, may be given effect; and '' where a statute would operate unjustly, or absurd consequences would result from a literal interpretation of terms and words used, the intention of the framers, if it can be fairly gathered from the whole act, will prevail." *Murray v. Hobson*, 10 Colo. 66. Words are to be

supplied, if necessary to give the statute force and effect. *Nichols v. Halliday,* 27 Wis. 406.

We are obliged to assume that in adopting the statute before us the legislature meant to accomplish some rational and sensible purpose; and we must, if possible, discover and effectuate this purpose. It is evident, however, that that body erred in the selection of a word to express the legislative intent, for the fee prescribed is to be paid upon the performance of a specified act, " as provided in said chapter," when no such act is therein mentioned; but that the legislature intended to designate the fee for some act coupled with the formation of corporations, and required by chapter 19, admits of no doubt; that it is something to be done by the secretary of state in connection with the certificate of incorporation is likewise put beyond question by the language employed.

Where uncertainty as to the meaning of a particular section exists, the whole act in which it is found should be considered. Upon turning to chapter 19 we find that an essential step in the formation of corporations for pecuniary gain is the *filing* of certificates of incorporation with the secretary of state. For the filing of such certificates a fee has always been exacted; and, construing the provisions of the chapter together with those of the amendatory act, we cannot escape the conclusion that the word "issuing," used in the latter, was inadvertently substituted for the word "filing," employed in the former. The intent to fix a larger fee or charge for the *filing* of certificates of incorporation with the secretary of state, where the corporation is organized for pecuniary gain, appears with sufficient clearness to forbid our declaring the statute a nullity.

"The object to be accomplished or the mischief to be remedied or guarded against " may be considered in construing doubtful statutes. Aside from securing a material increase of the public revenue, the statute before us will discourage the organization of corporations for

fraudulent purposes. The good name and credit of the state has suffered through the sale of stock by manipulators who have no serious expectation that there will be a return upon the investment. The capital stock is put at a fabulous sum, and sold at a figure so surprisingly low as to tempt the unwary. The comparatively large advancement in cash as a filing fee made prerequisite by the statute will operate, to some extent, as a wholesome restraint.

*Second.* That since the statute under consideration is an amendment of chapter 19, section 1416 (which is a part of chapter 38) is not affected thereby, and the secretary of state should have demanded but $8.50, in accordance with the terms of said section 1416, instead of $7,341.50 under this provision.

The statute in pursuance of which the secretary proceeded is the later act, having been adopted eight years subsequent to the passage of section 1416. It is an affirmative statute, providing a different regulation in connection with the same specific act. It covers the whole subject, and was evidently intended to prescribe the exclusive rule for the payment of the particular fee referred to. The two provisions are repugnant. It would hardly be contended, even by appellee, that both can stand, and that the secretary of state might, for filing the same certificate, exact the aggregate fees designated in both. One or the other must give way; and it requires the citation of no authorities to demonstrate that the former would have been repealed to the extent of the conflict by implication, even had the latter contained no repealing clause.

The fact that the latter statute does not in words refer to the earlier, but on the contrary purports to amend a different chapter, does not take away the repugnancy or alter the consequences arising therefrom. It is not absolutely necessary under the constitution that a repealing statute shall, either in its title or body, mention the statute repealed. Cooley, Const. Lim. 183.

*Third.* That the act in question is unconstitutional and void because the subject thereof is not clearly expressed in its title. Const. art. 5, § 21. The title challenged reads: "An act to amend chapter 19 of the General Laws of Colorado, entitled 'An act to provide for the formation of corporations.'"

Chapter 19, as the title indicates, relates to the formation of corporations. Anything pertaining to or connected with the organization of corporations would therefore be a proper subject of treatment in this chapter. Without the filing of its certificate of incorporation a corporation does not acquire a complete *de jure* existence; yet the payment of the fee prescribed in connection with such filing is essential thereto, and until the deposit thereof the secretary of state may refuse to receive the instrument. The specific matter, therefore, covered by the statute is clearly germane to the general subject expressed in the title, and we do not consider the present objection well taken.

The purpose of this constitutional provision is to prevent surprise and deception through legislation pertaining to one subject under a title relating to another. But it would be unreasonable as well as dangerous to require that each and every specific branch or subdivision of the general subject of an act be enumerated by its title. In reciting the several subordinate matters referred to, the hazard of violating that part of the provision which prohibits the treatment of more than one subject in the act is incurred; and, as a rule, it is wiser and safer not to attempt such enumeration, but to select an appropriate general title, broad enough to include all the subordinate matters considered. *Canal Co. v. Bright,* 8 Colo. 144.

*Fourth.* That the act is void because it purports to be an amendment of an existing statute, yet re-enacts no portion thereof.

The constitution (art. 5, § 24) declares that "no law shall be revived, or amended, or the provisions thereof

extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

The object of this constitutional provision is to prevent obscurity, confusion and uncertainty in the laws; likewise to defeat attempted impositions in the enactment of laws. It forbids, among other things, amending a statute simply and solely by striking out or inserting certain words, phrases or clauses; a proceeding formerly common, through which laws became complicated, and their real meaning often difficult of ascertainment even by the legal profession. It also in a measure frustrates the passage of vicious legislation through amendments, the scope or effect of which is not apparent from the acts themselves, by means whereof they are made. It deals with such amendments of existing legislation as change the application, force or effect of an act, or a portion thereof.

The statute challenged as void by virtue of conflict with the constitutional provision now under consideration in effect adds a section to the chapter mentioned by its title. It is properly termed an amendment, because, as we have seen, it deals with a matter germane to the general subject of the chapter. Yet it in no way changes any section or other specific portion of the act relating to the formation of domestic corporations for pecuniary gain. It introduces a requirement wholly new to the act, in so far as it pertains to this class of corporations. It is complete in itself, covering all there is in the chapter as amended with reference to the filing fee to be exacted from domestic corporations of the kind mentioned. It enacts and publishes at length so much of the act as it treats of. It can result in no ambiguity or uncertainty, nor could any legislator have been misled or deceived as to its purpose and effect.

Is it true that in order to adopt this provision *as an amendment* the legislature must have re-enacted the en-

tire one hundred and sixty sections of chapter 19, filling forty-two pages of the General Statutes, or at least the one hundred and twenty-five sections thereof that relate to domestic corporations for pecuniary gain? We cannot think for a moment that the framers of our constitution ever contemplated such an expensive, absurd and useless proceeding as the offspring of the constitutional section mentioned. It is, in our judgment, not within the spirit of the provision, and we shall decline to treat it as within its letter.

We do not admit the correctness of those decisions which hold analogous constitutional provisions to be directory merely; nor do we indorse the accuracy of the cases in which it is declared that these provisions are mere rules for the guidance of the legislature in the enactment of laws. In our judgment they are mandatory, not directory, and are to be classed among limitations of legislative power, rather than among those regulations of legislative conduct, a disobedience of which is held not necessarily fatal.

But since doubts exist with reference to the meaning of this constitutional provision, we discover no reason why the rule giving weight to legislative interpretation in such cases should not be invoked. The legislative view would, it is true, not be conclusive, yet it is important and deserves careful attention. Upon examination we find that the amendment of existing acts by the addition thereto of new provisions, without re-enacting the entire acts amended, has been a very frequent occurrence. Every general assembly of the state, from the first to the last, inclusive, has in some instances adopted this course; while, on the contrary, we know of no case where in merely adding a section the unamended portion of the act has been re-adopted as an entirety. Thus we have a legislative construction of the constitutional provision, uniformly and repeatedly announced by the

action of all general assemblies of the state hitherto assembled.

It is a matter also worthy of notice that among the statutes adopted in this way are provisions relating to the most important subjects of legislation. Educational institutions have been organized, judicial proceedings have been conducted, public improvements have been made and public debts incurred, and property rights have accrued, under and in pursuance of such statutes. The disastrous consequences that would result from holding them unconstitutional can neither be foreseen nor appreciated. While this consideration might not justify us in upholding statutes that are clearly unconstitutional, yet, were the scales of judgment upon the question evenly poised, it might properly incline the balance towards the validity of the legislation.

We are aware of the language employed by Mr. Cooley and other learned writers and jurists with reference to constitutional provisions somewhat analogous to the one now under consideration. Cooley, Const. Lim. 181 *et seq.*, and cases cited. But most of the constitutions mentioned by Cooley differ from ours in one important particular: they require the whole act or section amended to be re-enacted and published at length. The mandate we are considering directs that so much only of the law as is amended be thus re-enacted and published. In this respect the corresponding provisions in the constitutions of Colorado and Missouri are substantially the same. See *Mayor v. Trigg*, 46 Mo. 288. We have found but one case where the constitutionality of an act was challenged under facts similar to those presented in the case at bar, and upon the specific ground here urged, though that of *Mayor v. Trigg, supra*, is closely analogous. But the case referred to was decided by the supreme court of Alabama, where the constitutional provision is unlike that of Colorado in the particular above recited.

In so far as the statute under consideration relates to

the formation of domestic corporations,— corporations like appellee,— this particular constitutional objection is also overruled. The judgment of the court below must be reversed.

*Reversed.*

MR. JUSTICE ELLIOTT. Having presided at the hearing of this case below, I desire to express my full concurrence in the foregoing opinion. The questions involved being difficult, I granted the injunction as a matter of convenience.