[No. 1286.]

## THE CITY OF DENVER v. HART ET AL.

CITY OF DENVER—COUNTY TREASURER—FEES—CITY TAXES.

Sec. 5, article 6 of the amended charter of the city of Denver (Sess. Laws, 1885, p. 104) providing for compensation of certain county officers for extra work imposed in connection with the assessment of property in the city for city taxation and limiting such compensation to one per cent of the total city taxes, did not apply to the county treasurer for collecting the city taxes. The fees of the county treasurer were fixed by sec. 7 (Sess. Laws, 1885, p. 214) at one and one fourth per cent upon all taxes collected of every kind, and the treasurer was entitled to that per cent for collecting the city tax.

*Appeal from the District Court of Arapahoe County.*

Mr. F. A. WILLIAMS and Mr. G. Q. RICHMOND, for appellant.

Mr. CHARLES H. TOLL and Messrs. BENEDICT & PHELPS, for appellees.

BISSELL, J., delivered the opinion of the court.

An adverse judgment was entered against the city of Denver on a demurrer to a complaint filed by it in a suit against David W. Hart, who was formerly county treasurer of Arapahoe county, and the sureties on his bond. The cause of action which the city attempted to state was predicated on the treasurer's retention of one and one fourth per cent commission or fees on the various sums which as county treasurer, acting on behalf of the city, he had collected by way of taxes and sewer assessments during a definite period. The amounts collected and retained were separately stated, and the total amount alleged to have been illegally retained by the treasurer was $3,145.31. The bond was set out, and all other allegations essential to the statement of a cause of action, if one arose by reason of the treasurer's acts, were contained in the pleading. This is a sufficient résumé of the complaint. The only other requisite statement is the statutes on which the parties base their respective contentions. On the 16th of March, 1885, the legislature amended the city charter. We are concerned with none of its provisions except certain sections of article 6 respecting the power of the city to levy taxes, and the duties imposed on certain of the county officers with reference to their collection. By the terms of the charter, the council were given power to levy taxes for certain purposes within certain limits, based on the assessment laid by the county assessor. To facilitate the collection, and as a measure probably of economy, the charter provided by section 2 of this article, that the county assessor should do whatever was necessary to designate the property within the limits of the city, and provide a basis on which the county clerk and recorder might compute the assessment and certify it to the council. The next section made it the duty of the clerk to certify and the city thereafter to make the proper levies and cause the total to be certified back to the county clerk, who should extend it on the tax list of the year in a way specified by the act. The next section made it the duty

of the treasurer of the county to collect the taxes in the manner and at the time that county and state taxes were collected, and made all the laws of the state for the assessment and collection of general taxes, applicable to the collection of taxes for the city. The county treasurer at the close of each month and oftener if required by the council was bound to pay over to the city treasurer all moneys which he had collected and report his payments to the city auditor. It is over this section and a provision in another act that the contention springs. According to section 5 the city council was given authority in each year to make such allowances to be paid out of the general fund " to the said county officers as shall be a reasonable and just compensation for the extra labor imposed " not exceeding in the aggregate one per cent of the total amount collected. At the same session of the legislature an act was passed called the " Fee Bill " which provided for the fees of the various county officers in the state. This was passed on the 9th of April and without an emergency clause taking effect in July, though the charter took effect immediately. By section 7 of the fee bill in counties of class A, within which Arapahoe county is included, the county treasurer's fees were fixed at a definite sum as and for his compensation, to wit, " one and one fourth per cent on all moneys received by him for taxes of *every kind;* " and on all other moneys his fees were one and one half per cent.

The naked question presented is therefore, whether the compensation of the county treasurer for the collection of city taxes is to be determined and computed according to section 7 of the fee bill, or whether the provision of section 5 of the charter with reference to the compensation of the assessor, county clerk and recorder, and treasurer, for extra labor must control. If the latter be true, then one per cent of the total sum collected is all that can be paid the three several officers for their extra labor as well as all that may be paid to or retained by the treasurer for the duty and responsibility of the collection and payment to the city treasurer. The prin-

cipal argument of the city is based on the theory that the statutes are repugnant and can only be reconciled on the hypothesis that the provisions of the charter which relate especially to the collection of city taxes must control the compensation of these officers, and that the other provision although broad, sweeping, and comprehensive in its character must be limited to the collection of taxes other than those levied for the city's benefit.   On the other hand, it is elaborately argued, that if the statutes are irreconcilable and in conflict, the general fee bill, being a later act, must be taken as operative to repeal the former statute by implication, and being later in time must control.   The city insists that repeals by implication are not to be favored, which as a general proposition is undoubtedly true, and that therefore it must be the aim of the court to so construe the acts that both may stand.   We are quite of the opinion that the question of repeal by implication is not necessarily involved, and we are equally convinced that there is no repugnancy or irreconcilability between the two acts, but that they were conceived and enacted for the purpose of providing for two separate classes of cases and established a compensation to be paid sundry officers on specific conditions and for definite services. As we view the charter it was the purpose of the legislature to impose on the county officers, the assessor, county clerk and treasurer, certain definite duties with respect to the collection of city taxes.   This was deemed the wisest and most economic method of procedure, and in order to provide a way by which these officers should be paid for their services, for they were fee officers, the extra labor laid on them by the terms of the charter was to be paid for by the city out of its. general revenues.   To insure reasonable economy and to prevent any excessive expenditure of the public funds by the city government or county government, a limitation was put on the amount which the city might pay for what these officers did.   This limit was one per cent of the total amount of taxes.   It would seem that the limit was an extreme one, but the evident legislative object was to prevent a wasteful

expenditure of the funds and they left it largely to the discretion and judgment of the city authorities to determine what they should pay. We see no objectionable features in this sort of legislation, nor can we discover any condition which requires us to hold that it was the legislative purpose that within this limit and for this extra labor the treasurer should find his total compensation. Our conclusion is very much strengthened by the terms of the fee bill which fix the county treasurer's compensation at one and one fourth per cent on the collection of taxes " of *every kind*." This language is as broad and as sweeping as it could be made, and would undoubtedly in the absence of the other provision, be taken to include a compensation for the collection of the city taxes. Wherever the treasurer has a right to retain one and one fourth per cent for the collection of every kind of taxes, city taxes are *ex vigore* included within this term. It is impossible to hold that the treasurer was not entitled to that per cent unless we conclude that the statutes are irreconcilable and hopelessly in conflict and that both cannot stand together, because otherwise it would seem to be inevitable that the later statute by the breadth of its terms could be taken to repeal the former, notwithstanding the general principle that repeals by implication are never adjudged except in extreme and unavoidable cases. *Kollenberger et al. v. The People*, 9 Colo. 233 ; *Edwards v. Denver & Rio Grande Ry. Co.*, 13 Colo. 59 ; *Branagan et al. v. Dulaney*, 8 Colo. 409.

Though we recognize this principle as well as the cogent one, that statutes in *pari materia* are to be construed together and so construed as that both may stand, we think we are justified by both principles in holding that they may stand, and that the first is not operative to control or fix the compensation of the county treasurer in the collection of the city taxes, but that section 5 of the charter is only intended to confer on the city council authority to compensate the officers for the extra labor imposed on them by the additional work other than the actual collection by the treasurer of the city taxes. If we did not reach this conclusion it might lead to

most disastrous results and a very large labor and respon-
sibility be imposed on the county treasurer without compen-
sation.   If the city council by reason of personal or political
hostility should see fit to fix the extra compensation of the
assessor and county clerk and recorder at ninety-nine one
hundredths of one per cent, which· they certainly have author-
ity to do, the treasurer would get an insignificant percentage
for discharging a very onerous and a very responsible duty.
No control seems to be laid on the exercise of the discretion
confided to the counsel, and this is a very persuasive reason
for holding that the only purpose of the charter provision was
to secure a way by which these officers could be paid for
extra labor, leaving the treasurer's fees for collection to be
fixed by the general act which was subsequently passed in
such broad terms as reasonably to include this matter.

These conclusions accord with the judgment as entered
and it will accordingly be affirmed.

*Affirmed.*